UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

NOREMBERG BORJA, :
:
    Plaintiff :
:
v. : CIVIL NO.4:CV-04-2657
:
SUSAN GERLINSKI, ET AL., : (Judge McClure)
:
    Defendants :

## **ORDER**

September 6, 2005

**Background**

    This action pursuant to the Federal Tort Claims Act ("FTCA") was initiated by Noremberg Borja ("Plaintiff") regarding his prior confinement at the Allenwood Low Security Correctional Institution, White Deer, Pennsylvania ("LSCI-Allenwood").[1] Named as Defendants are LSCI-Allenwood Warden Susan Gerlinski and the United States of America. The required filing fee has been paid and the Plaintiff is represented by counsel.

    Plaintiff states that while confined at the Federal Detention Center, Miami, Florida ("FDC-Miami") he developed a rash "that intermittently developed into pustules." Record document no. 1, ¶ 8. After being transferred to LSCI-Allenwood

---

[1] Borja has been released from federal custody and deported to Colombia.

"the pustules spread throughout his body making him unsightly and causing others to refuse any contact with him." Id.  Following the taking of a biopsy, LSCI-Allenwood medical staff allegedly misdiagnosed his condition as being perforating collagenosis, a rare skin condition associated with kidney disease or diabetes.  Borja maintains that he retained a non-BOP specialist, Doctor Mark Lebwohl who reviewed his biopsy records and concluded that he is actually suffering from a condition known as prurigo nodularis.  Despite the fact that Dr. Lebwohl's diagnosis was forwarded to Warden Gerlinski, LSCI-Allenwood medical staff failed to provide the treatment recommended by Dr. Lebwohl.  His complaint asserts that the Defendants' failure to provide proper treatment constituted negligence.  Plaintiff seeks compensatory damages.

Presently pending is the Defendants' motion requesting entry of summary judgment. See Record document no. 6. The motion is ripe for consideration.[2]

**Discussion**

Defendants' sole argument maintains that they are entitled to an entry of summary judgment on the basis of the contractor exception to the FTCA.  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue

---

[2]  Although Defendants' reply brief indicates that Plaintiff has opposed their request for summary judgment, a review of the docket reveals no indication that an opposing submission was filed.

as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex, supra, 106 S.Ct. at 2553 and 2554.  Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Issues of fact are "genuine only if a

reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.  Id.  In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

Defendants acknowledge that the Plaintiff entered federal custody on October 8, 1996 and was held at FDC-Miami until May 27, 1998.  While at FDC-Miami, Borja was treated for skin problems.  Plaintiff was transferred to LSCI-Allenwood and arrived at that facility on June 15, 1998.  He remained confined at LSCI-Allenwood until January 31, 2003.  Borja was thereafter deported to Columbia.

The FTCA provides a remedy in damages for the simple negligence of employees of the United States with regards to their protection of federal inmates. United States v. Muniz, 374 U.S. 150, 150 (1963).  A plaintiff pursuing an FTCA claim must show:  (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss.  Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961), aff'd, 306 F.2d 713 (3d Cir.), cert. denied, 371 U.S. 923 (1962).  It is additionally noted that the United States of America is the only proper Defendant for purposes of the FTCA.

"[I]t is well understood that government's activities are not performed exclusively by the government's employees and that independent contractors and subcontractors conduct a broad array of functions on the government's behalf." Norman v. United States, 111 F. 3d 356, 358 (3d Cir. 1997). A federal employee for purposes of the FTCA is defined as an employee of any federal agency but does not include any contractor with the United States. Richardson v. Philadelphia Authority for Industrial Development, 2004 WL 1614882 *2 (E. D. Pa. July 16, 2004).

The United States has not waived its immunity and cannot be sued with respect to negligent or wrongful act committed by an independent contractor. United States v. Orleans, 425 U.S. 807, 814 (1976). Thus, there is "an independent-contractor exemption" in the FTCA. Norman, 111 F. 3d at 357. Under this exemption, if the negligence causing the injury was that of an independent contractor there is no basis for liability under the FTCA.

The Court of Appeals for the Third Circuit has established that the test as to whether a defendant is a federal employee or an independent contractor depends on the federal government's power "to control the detailed physical performance of the contractor." Id. If there is no day to day supervisory control exerted over the

5

person's daily operations by the federal government, the individual is considered an independent contractor.  See id.

In the present case, Borja's claims are twofold.  First, he contends that there was a negligent, erroneous diagnosis of his skin condition.  Second, he claims that after he provided prison officials with the correct diagnosis, the LSCI-Allenwood medical staff failed to follow the recommended course of treatment.

### A.   **Negligent Diagnosis**

Plaintiff's complaint claims that his skin condition was misdiagnosed.  Prior to his arrival at LSCI-Allenwood on June 15, 1998, Borja had a history of skin lesions and underwent treatment for a skin condition.  On June 17, 1998, he was given a steroid cream and prescribed an antihistamine for a rash on his upper torso and buttocks.  His next involvement with the prison medical staff occurred on September 29, 1998 when he underwent treatment, including an evaluation at an outside hospital, for a severe allergic reaction.

On February 12, 1999, Plaintiff sought treatment with respect to "a general rash over his entire torso."  Record document no. 7, p. 3.  He was "observed with multiple round erythematous lesions at various stages of development."  Id.  The prison medical staff prescribed him medication and he was told to return for a follow-up

appointment in two (2) weeks. According to the Defendants, Borja did not appear for his follow-up appointment. Borja sought assistance on March 25, 1995 for a recurrence of his rash. The Plaintiff allegedly agreed that his prior rash had improved through use of the previously prescribed medications. His prescription for Keflex was renewed and Borja was told to return for follow-up care in two weeks if needed. He purportedly did not return.

Over a year later, on June 27, 2000, Plaintiff was again seen by the prison medical staff for a rash. He was assessed as having chronic bacterial dermatisis and prescribed Augmentin (an antibiotic), hydroxyzine, and calamine lotion. Blood testing was also ordered. During a return visit on July 11, 2000, it was noted that his rash was improved but not resolved. His calamine lotion and hydoroxyzine treatment was continued.

The Plaintiff was seen by the LSCI-Allenwood Clinical Director Doctor Ansari, on August 9, 2000. Doctor Ansari noted the presence of many skin lesions and recommended a referral to a dermatologist and a skin biopsy. It is undisputed that on October 6, 2000, Dr. Ansari performed a punch skin biopsy. Skin samples were then sent to the Geisinger Medical Laboratories for analysis. In a Surgical Pathology Report dated October 16, 2000, the Geisinger Medical Laboratories ("Geisinger")

appointment in two (2) weeks.  According to the Defendants, Borja did not appear for his follow-up appointment.  Borja sought assistance on March 25, 1995 for a recurrence of his rash.  The Plaintiff allegedly agreed that his prior rash had improved through use of the previously prescribed medications.  His prescription for Keflex was renewed and Borja was told to return for follow-up care in two weeks if needed.  He purportedly did not return.

Over a year later, on June 27, 2000, Plaintiff was again seen by the prison medical staff for a rash.  He was assessed as having chronic bacterial dermatisis and prescribed Augmentin (an antibiotic), hydroxyzine, and calamine lotion.  Blood testing was also ordered.  During a return visit on July 11, 2000, it was noted that his rash was improved but not resolved.  His calamine lotion and hydoroxyzine treatment was continued.

The Plaintiff was seen by the LSCI-Allenwood Clinical Director Doctor Ansari, on August 9, 2000.  Doctor Ansari noted the presence of many skin lesions and recommended a referral to a dermatologist and a skin biopsy.  It is undisputed that on October 6, 2000, Dr. Ansari performed a punch skin biopsy.  Skin samples were then sent to the Geisinger Medical Laboratories for analysis. In a Surgical Pathology Report dated October 16, 2000, the Geisinger Medical Laboratories ("Geisinger")

made a diagnosis of Reactive Perforating Collagenosis.  See id. at p. 6.  Borja was subsequently informed of the results and diagnosis by Doctor Ansari, who added that there was no available treatment for that condition.  However, Ansari did prescribe an antibiotic. The LSCI-Allenwood medical staff continued to provide Plaintiff with treatment for the skin condition as diagnosed by Geisinger.

On March 1, 2002, Doctor Robert Long, M.D., a contract dermatologist, evaluated the Plaintiff pursuant to a request from Doctor Ansari.  Long noted that the rash was "clinically consistent with reactive perforating collagenosis."  Id. at p. 11.

It is undisputed that the alleged negligent diagnosis of Plaintiff's skin condition was made by both Geisinger and Doctor Long.  While the LSCI-Allenwood medical staff may have specified the requirements of the testing to be performed by Geisinger, such action does not shed the status of Geisinger and Doctor Long as independent contractors.   See Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996).  Neither Geisinger nor Doctor Long are identified as being employees of the federal government.  There is also no indication that the federal government exercised any control over the performance of those Defendants.  This is simply not a case where the United States managed the duties or oversaw the daily routine of either Geisinger or Doctor Long.  See Ryan, 304 F. Supp. 2d at 685.

Since there was no day to day supervisory control exercised by the federal government over Geisinger and Doctor Long, under the Norman and Robb standards, any claim premised upon the alleged negligent diagnosis made by Geisinger and Long is barred by the independent contractor exception to the FTCA.

**B.     Failure to Follow Recommended Course of Treatment**

Borja also alleges that LSCI-Allenwood medical staff members were negligent for their failure to follow a course of treatment recommended by his privately retained specialist. Specifically, the Plaintiff alleges that he retained Mark Lebwohl, M. D., Chairman of the Dermatology Department at the Mount Sinai Medical Center, to undertake a review of his skin biopsy records. Doctor Lebwohl concluded that the prior diagnosis of Plaintiff's condition was incorrect and that he was actually suffering from "prurigo nodularis." Record document no. 1, ¶ 9.

By letter dated July 31, 2002, Doctor Lebwohl recommended that Borja be treated with an "intralesional injection of corticosteroids and topical application of corticosteroids." Id. Plaintiff asserts that Warden Gerlinski was immediately notified of the contrary diagnosis and recommendation of a different course of treatment.

Borja contends that the failure of LSCI-Allenwood medical staff to follow this new recommended course of treatment by a qualified specialist constituted negligence.

Defendants acknowledge that Doctor Long spoke with Doctor Lebwohl and as a result of their meeting recommended that Plaintiff be given steroids for treatment. A second punch biopsy was performed on December 11, 2002 and sent to Geisinger for analysis. The findings made by Geisinger were inconclusive and an additional biopsy was recommended. The additional biopsy was undertaken on January 10, 2003. However, Plaintiff was released to immigration officials and left LSCI-Allenwood before the results of the latest biopsy were obtained.

However, as previously noted, Defendants seek entry of summary judgment based solely on their independent contractor argument. Defendants' factual assertions regarding actions taken by Doctor Long and the LSCI-Allenwood medical staff after being apprised of Doctor Lebwohl's contrary diagnosis have no bearing on the issue of whether this portion of the complaint is barred by the independent contractor exception.

The claim that LSCI-Allenwood medical staff failed to follow Doctor Lebwohl's prescribed course of treatment clearly asserts negligent conduct by federal

employees, and therefore is not precluded by the independent contractor exception. This claim will be allowed to proceed. Consequently,

**IT IS HEREBY ORDERED THAT:**

1. Defendants' summary judgment motion (Record document no. 4) is GRANTED IN PART.

2. Summary judgment is granted with respect to the allegations of negligent diagnosis by Geisinger Medical Laboratories and Doctor Robert Long.

3. Plaintiff's claim that the failure of LSCI-Allenwood Medical staff to follow Doctor Lebwohl's recommended course of treatment constituted negligence will be allowed to proceed.

4. Since the United States of America is the only proper Defendant for purposes of the FTCA, it will be deemed the sole remaining Defendant.

    s/James F. McClure, Jr.  
JAMES F. McCLURE, JR.  
United States District Judge